UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NUMBER   11-0217** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **RAUL X. JOHNSON** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress [doc. # 21] filed by defendant, Raul X. Johnson.  For reasons stated below, it is recommended that the motion be **DENIED in part and GRANTED in part**.

On August 25, 2011, a federal grand jury issued an indictment charging Johnson with seven counts of Mail Fraud in violation of 18 U.S.C. § 1341, and one count of False Statement to a Federal Agent in violation of 18 U.S.C. § 1001.  On September 20, 2011, the defendant was arraigned and entered a plea of not guilty.

On December 22, 2011, Johnson, a Monroe Police Department Officer, filed the instant motion to suppress evidence seized during a search of the police cruiser assigned to him by the department.  He argues that the search was unconstitutional, as it was conducted without a search warrant.  He also argues that the only consent given to search the vehicle was by the Chief of Police, and that no other exceptions to the warrant requirement were present.

In its December 29, 2011, responses to the motions, the government contends that the defendant lacked any reasonable expectation of privacy in the vehicle, as he did not have

exclusive access to it.  In the alternative, the government argues that the search fell under an exception to the warrant requirement for criminal investigations of government employees.

An evidentiary hearing was held before the undersigned on February 2, 2012.  Following the hearing, the parties were allowed to submit post-hearing briefs regarding the effect on this case of the recent Supreme Court decision in *United States v. Jones*, 132 S. Ct. 945 (2012).  In his post-hearing brief, the defendant has raised the argument that the search of his desk at Carroll Junior High School also violated his Fourth Amendment rights, and evidence found therein should be suppressed.  *See* Doc. # 29, p. 3.  The matter is now before the court.

## Background

Testimony at the hearing established that the Monroe, Louisiana, Police Department ("MPD") was conducting an investigation of one of their own:  Defendant Raul X. Johnson, a school resource officer assigned to Carroll Junior High School.  Transcript from Hearing on Motion to Suppress ("Tr."), pp. 25, 28.  The complaint dealt with an eBay account in Johnson's name that was being utilized to sell stolen merchandise.  Tr. p. 40.  MPD Sgt. Charles Roark testified that he opened his investigation on September 8, 2008.  Tr. p. 41.  Shortly thereafter, the Federal Bureau of Investigation ("FBI") was asked to assist.  Tr. pp. 25 & 41.  Special Agent Bill Chesser testified that he was first contacted on September 12, 2008.  Tr. p. 54.

Because of suspicions that Johnson might be conducting the scheme during work hours, permission was sought and obtained from then Chief Ron Schleuter to place a GPS tracking device on the MPD vehicle typically utilized by the defendant.  Tr. pp. 26, 29 & 49.[1]  So Johnson would not know of the installation, the vehicle was transported from MPD to Metro Narcotics in

---

[1] Sgt. Roark testified that his suspicion that Johnson was involved in the scheme during work hours arose from the fact that Johnson, a married man, was involved in the scheme with a woman who was not his wife.  Tr., p. 29.

West Monroe by Sgt. Vincent Brown of Technical Services. Tr. pp. 3-4. Sgt. Brown testified that he was aware that the investigation involved eBay and that, upon entering the vehicle, he saw documents related to eBay between his right thigh and the vehicle's console. Tr. pp. 4-5, 12-14. Lt. Bill Webb notified Sgt. Roark of the presence of the documents. Tr. p. 18. Roark and Special Agent Chesser responded to the scene and searched the unit. Tr. pp. 31-38, 49, 54-55. The relevant documents were photographed and returned to the vehicle so that Johnson would be unaware of the search. Tr. pp. 38, 45, 49. Among the items found were six letters addressed to Johnson related to eBay and a letter addressed to Stephanie Payne. Tr. p. 51.

While Johnson had a vehicle assigned to him for his use, it was not a "take home" car. He had to pick it up at the start of his shift and return it at the end of the day. Tr. p. 27. Even when assigned a specific vehicle, an officer did not have the only set of keys. Tr. pp. 24, 27.[2] Sgt. Roark testified that Chief Schleuter never indicated to officers that they had exclusive use of their assigned vehicles. Tr. p. 27. In response to the question "[h]ad Chief Schleuter ever indicated to the officers in any way that they had any veto authority over anything he wanted to do with those cars?", Sgt. Roark testified "[i]t would have been the opposite. We weren't allowed to install items in the car without permission of our supervisor. Our units are always subject to inspection of my supervisor for cleanliness, for proper gear, things of that nature, that their oil had been changed or checked, that kind of thing." Tr. p. 47. Sgt. Roark also testified that Johnson's unit could have been utilized by other officers if needed to conduct surveillance. Tr. p. 47. Lt. Webb testified that even though he had a take home car, he did not believe that the Chief needed his consent to do anything with the unit. Tr. p. 24. Sgt. Brown testified that the

---

[2] To move Johnson's assigned unit to install the tracker, the keys were obtained from the fleet maintenance supervisor by Sgt. Roark. Tr. p. 30.

vehicle was primarily used by the defendant but could have been utilized by another school resource officer if needed. Tr. p. 9.

Johnson's unit was searched again on February 17, 2009. Earlier that day, Special Agent Chesser had obtained search warrants from the undersigned for Johnson's person, Stephanie Payne's person and Stephanie Payne's home. Tr. p. 51. The February 17, 2009, search of the vehicle was conducted by Sgt. Roark and SA Chesser. Because of the age of the documents that the investigators found during the first search, the officers believed that those documents and others would be found in the unit. Tr. p. 38. During this second search, investigators found envelopes addressed to Johnson at the post office box in West Monroe involved in the scheme and banking items. Some of the items had been found in the car in the previous search. Tr. p. 52.

On February 19, 2009, pursuant to the previously obtained search warrant, Johnson was searched. At the time of this search, investigators were aware that Iberia Bank and Paypal had issued debit cards to Johnson. These cards were not found on his person. After the search of his person, the defendant was interviewed and he acknowledged possessing such cards. Following that admission, his unit was again searched in an attempt to locate the cards, and one was recovered. Tr. p. 52-53.

Johnson's office at Carroll Junior High School was searched on February 20, 2009, with the permission of Johnson's supervisor and the principal of the school. Tr. p. 53. Sgt. Roark had specifically been instructed by Johnson's supervisor to locate and retrieve a small laptop belonging to MPD. Tr. p. 39. Roark and SA Chesser located a debit card and bank statements during this search. Tr. p. 40.

## Law and Analysis

In the motion to dismiss, the defendant contends that the officers violated his Fourth Amendment rights when they searched his police vehicle without a search warrant, without consent, and without exigent circumstances. In his post-hearing brief, the defendant also claims that the search of his desk at Carroll High School violated the Fourth Amendment. He argues that the evidence seized during these two searches must now be suppressed.

**I.     Search of the Vehicle**

As a preliminary matter, the undersigned feels compelled to address the Supreme Court's recent decision in *United States v. Jones*, 132 S. Ct. 945 (2012). In *Jones*, a majority of the Court ruled that attaching a GPS tracking device to a vehicle and using it to monitor the vehicle's subsequent movements constituted a search under the Fourth Amendment. The Court reasoned that a search occurs whenever the government "physically occupie[s] private property for the purpose of obtaining information." *Jones*, 132 S. Ct. at 949. In a concurring opinion, four of the justices opined that clandestine long-term monitoring of the defendant through the GPS device constituted a search because it "impinge[d] on expectations of privacy." *Id*. at 964 (Alito, J., concurring).

To the extent *Jones* held that GPS surveillance, whether long-term or short-term, constitutes a Fourth Amendment search, it is inapplicable here. In this case, it is not the GPS surveillance that is alleged to have infringed on Johnson's Fourth Amendment rights, and the government is not intending to introduce the surveillance results. Rather, Johnson alleges in his motion to suppress that the officers violated his rights during the actual search of the vehicle, which they conducted while installing the device. *See* Doc. # 21. In a post-hearing brief addressing the impact of the *Jones* decision, the defendant agrees the issue of surveillance is irrelevant, as he claims that "[i]t is the installation of the device itself that is the search and

seizure." Doc. # 29, p. 4. The undersigned agrees that any potential search and seizure would have occurred when the officers entered the car to move it and install the device; thus, the *Jones* decision will not be considered in this respect.

Where the *Jones* decision is relevant, however, is on the issue of the proper test for analyzing what constitutes a "search" for purposes of the Fourth Amendment. A majority of the Court found that a search occurred when "[t]he Government physically occupied private property for the purpose of obtaining information." *Jones*, 132 S. Ct. at 949. The four Justices concurring in the judgment reached this conclusion based on the "reasonable expectation of privacy" test established in *Katz*. *See id.* at 957-964 (Alito, Ginsburg, Breyer, & Kagan, JJ., concurring in the judgment); *see also Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). And in fact, the majority stressed that their trespass rationale was not inconsistent with *Katz*. *Jones*, 132 S. Ct. at 952 ("[T]he *Katz* reasonable-expectation-of-privacy test has been added to, not substituted for, the common-law trespassory test."). Thus, *Jones* established, or perhaps reiterated, that there are two ways to analyze this issue: a traditional common-law property rights test and the *Katz*/reasonable-expectation-of-privacy test. *See United States v. Hanna*, No. 11-20678-CR, 2012 WL 279435, *3-5 (S.D. Fla. Jan 30, 2012) (discussing *Jones* and applying both tests to determine that the defendants lacked standing to challenge the installation and use of a GPS device in someone else's vehicle).

It is important to note that this aspect of the analysis is inextricably tied to the concept of Fourth Amendment standing.[3] Recognizing "the principle that the rights assured by the Fourth Amendment are personal rights," the Supreme Court has held that a defendant cannot claim the

---

[3] This requirement is typically referred to as "standing," although the term is used "for brevity's sake" and exists apart from the question of Article III standing. *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

protection of the Fourth Amendment unless he "has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 138, 143 (1978). The defendant's expectation must be "personal[ ]" and "reasonable," and it must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citations and internal quotations omitted). Thus, while the question of whether a search occurred has traditionally been an issue of whether a defendant has some interest—whether property or privacy—in the place intruded upon, the question of standing is whether the challenged intrusion violated this *particular* defendant's interest.

Under either approach recognized by *Jones*, the defendant here lacks the required standing to challenge the intrusion into the vehicle. From a trespassory approach, Johnson had no property rights whatsoever in the vehicle; the hearing testimony established that it was owned by the Monroe Police Department. Tr. p. 8. Standing, however, does not require an ownership interest. *See Minnesota v. Olson*, 495 U.S. 91 (1990) (recognizing that an overnight guest in a home has a legitimate expectation of privacy in that home). And at first blush it would appear that Johnson might have had some possessory interest in the vehicle, as he drove it on a day-to-day basis with the permission of the department. The Fifth Circuit has held that "where a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search." *United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir. 2011) (quoting *United States v. Lee* 898 F.2d 1034, 1038 (5th Cir. 1990)). Nevertheless, in both *Hernandez* and *Lee*, the borrower of the car was in possession of it at the time of the search. *Hernandez*, 647 F.3d at 219-20 (defendant had standing to challenge GPS surveillance of brother's truck while he drove it, but not placement of

tracking device while it was parked on the street); *Lee*, 898 F.2d at 1038 (defendant could challenge search that occurred while he was operating truck with owner's permission); s*ee also Jones*, 132 S. Ct. at 952 (emphasizing that Jones "possessed the Jeep at the time the Government trespassorily inserted the information-gathering device"). Here, Johnson relinquished his possessory interest when he parked the car on the department lot at the end of each day. Indeed, at the time of the intrusion, the car was parked on the lot, out of his possession. Therefore, under the *Jones* trespassory approach, Johnson lacks standing to challenge a trespass onto property to which he had no rights. *See Hanna*, 2012 WL 279435 at *3 (applying *Jones* trespass approach to find defendants lacked standing to challenge search of co-defendant's car).

Similarly, under a *Katz* analysis, Johnson had no reasonable expectation of privacy in the vehicle. The question of whether a defendant has a reasonable expectation of privacy sufficient to contest the validity of a search is a two-fold inquiry: "(1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007) (quoting *United States v. Cardoza–Hinojosa*, 140 F.3d 610, 614 (5th Cir. 1998).

Here, the defendant has not demonstrated an actual, subjective expectation of privacy in the police cruiser. No testimony was presented at the hearing that would support such a finding. In fact, the testimony presented at the hearing established that the defendant took no affirmative actions to conceal or keep secret the eBay documentation. *See United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007) (noting that an individual claiming a subjective expectation of privacy must demonstrate that he sought to preserve the objects of the search as private). He left various documents lying out in the open in a vehicle to which he did not have exclusive access. He knew

that he did not have the only set of keys. He returned the car to the MPD lot at the end of each shift. Other officers testified that the police chief had never indicated to the department that they had exclusive use of their vehicles, and that even take-home vehicles were subject to inspection at any time. Tr. pp. 27, 47. Thus, the defendant has not established a subjective expectation of privacy in the vehicle.

Furthermore, regardless of his subjective expectations, the defendant did not have a reasonable, objective expectation of privacy that society should be willing to recognize. The factors to consider include:

> whether the defendant has a [property or] possessory interest in the thing seized or the place searched, whether he has a right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy[,] and whether he was legitimately on the premises.

*Cardoza–Hinojosa*, 140 F.3d at 615 (quoting *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991) (first alteration in original)).

Here, the undersigned has already determined that the defendant had no property or possessory interest in the vehicle, and that he has not exhibited a subjective expectation of privacy. Furthermore, the testimony established that he did not have the right to exclude others from the vehicle, as he did not have the only set of keys, and his supervisors could allow other officers to use it. No evidence was offered by either party as to any precautions taken by the defendant or the legitimacy of his presence in the vehicle.

Given the totality of the circumstances, the defendant has failed to establish a property or privacy interest in the vehicle. Accordingly, the undersigned finds that the defendant lacks

standing to challenge the validity of the search.[4]

Because the standing argument fully resolves the defendant's motion with respect to the search of the vehicle, the undersigned will not address the other points raised in opposition by the government.

## II. Search of the Desk

The defendant argues in his post-hearing brief that his Fourth Amendment rights were violated when his desk and personal effects were searched at Carroll Junior High School. He claims that he had a legitimate expectation of privacy in the desk, and that any third-party consent to search it was ineffective.

As with the vehicle, the first question is whether the officers' intrusion into Johnson's desk was a search for purposes of the Fourth Amendment. Under *Jones*'s trespassory approach, it is not clear what, if any, property rights Johnson had to the desk. Neither the government nor the defendant has produced evidence showing who owned the desk, and although the evidence indicates that Johnson had the exclusive right to use the desk, it is not clear whether he was actually in possession of it at the time of the intrusion.

Nevertheless, the undersigned finds that the intrusion constitutes a search under the reasonable expectation of privacy test outlined in *Katz*.[5] In *O'Connor v. Ortega*, 480 U.S. 709 (1987), a majority of the Court found that a public employee had a reasonable expectation of

---

[4] Although the officers searched the vehicle two more times, it does not appear that the defendant is challenging the validity of these later searches. *See* Doc. # 29, p. 2 ("The two searches which took place in this matter . . . ."). In any event, the same analysis applied to the first search would apply to the later two searches, and the defendant would lack standing to challenge these searches as well.

[5] The *Jones* majority emphasized that their trespassory approach was not intended to provide the only method of analyzing police intrusions under the Fourth Amendment. *See Jones*, 132 S. Ct. at 953 ("[W]e do not make trespass the exclusive test.").

privacy in the desk and file cabinets located in his own private office. *See id.* at 718–19 (per Justice O'Connor, with the Chief Justice and two Justices concurring and one Justice concurring in judgment). The Court began its analysis in *O'Connor* by stating that "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government[,]" but "[p]ublic employees' expectations of privacy . . . may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.*; *see also United States v. Scrushy*, 2005 WL 4149004 (N.D. Ala. 2005) (defendant's expectation of privacy in his office was unreasonable in light of company policies). Additionally, "some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable." *Id.* at 718; *see also United States v. Ziegler*, 474 F.3d 1184 (9th Cir. 2007) (employee's expectation of privacy in his office was reasonable, in part because it was not shared with co-workers). The Court noted, however, that the defendant in that case did not share his desk or file cabinets with any other employees, and there was no evidence that any reasonable regulations or policies were in effect that might have reduced the defendant's privacy expectation. *O'Connor*, 480 U.S. at 718-19.

Similarly, the testimony here established that the desk at Carroll Junior High was the defendant's own private desk reserved for his exclusive use. Tr. p. 55. There has been no indication that he shared the desk with any other employees, that it was largely open to the public, or that any policies or practices were in place that might have diminished his privacy expectation. Thus, the undersigned finds that Johnson had a legitimate expectation of privacy in the desk, and he can challenge its intrusion under the Fourth Amendment.

      **1.**      **Workplace Search Exception**

Since the search was conducted without a warrant, it was presumptively unreasonable unless it satisfies one of "a few specifically established and well-delineated exceptions." *Katz*,

*supra*, at 357.  In *O'Connor*, the Supreme Court held that the "special needs" of the workplace warranted one such exception.  *O'Connor*, 480 U.S. at 725.   Finding that work-related intrusions by public employers are justified by the government's interest in "the efficient and proper operation of the workplace," the Court found that such intrusions are permissible as long as they satisfy a standard of reasonableness under all the circumstances.  *Id.* at 723-26.  The Court specifically limited its holding to cases involving "either a noninvestigatory work-related intrusion or an investigatory search for evidence of suspected work-related employee misfeasance." *Id.* at 723.

In this case, the undersigned finds that *O'Connor*'s exception to the warrant requirement has not been triggered. The search of Johnson's desk was anything but "non-investigatory"; it was part of an extensive investigation into criminal activity unrelated to his work.  At the time of the search, the investigation into Johnson's alleged activities on eBay had been open for over five months.  The day before the officers went to the school, they searched the defendant's person pursuant to a warrant looking for debit cards that had been issued to him by Iberia Bank.  Tr. p. 52.  The officers did not find any cards on Johnson, but he indicated to them during a subsequent interview that he possessed the cards. *Id.* at 52-53.  Special Agent Chesser testified at the hearing that after they only found one card in the police cruiser, they obtained permission to search the desk at Carroll Junior High. *Id.* at 53.  They then found another debit card in the desk. *Id.*  This sequence of events certainly suggests that the search of the desk was part of the ongoing criminal investigation, and not simply a work-related search by the defendant's employer.  Indeed, the search was conducted by law enforcement officers, including Special Agent Chesser of the FBI, in their capacity as investigators, not employers.  The government "cannot cloak itself in its public employer robes in order to avoid the probable cause requirement when it is acquiring

evidence for a criminal prosecution." *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991) (citing *O'Connor*, 480 U.S. at 724) (finding that "[w]hile the burden of showing probable cause and obtaining a warrant may be 'intolerable' for public employers, it is *de rigueur* for law enforcement officials.").

In its post-hearing brief, the government argues that the officers were specifically authorized to go to the school to retrieve a laptop computer, which was government property. This argument hints at the *O'Connor* plurality's finding that "the concept of probable cause has little meaning for a routine inventory conducted by public employers for the purpose of securing state property." *O'Connor*, 480 U.S. at 723 (citing other sources). The officers' intrusion into the desk in this case, however, was not a "routine inventory" to secure state property. This conclusion is supported by the fact that Special Agent Chesser of the FBI was involved in the search; if the officers were merely retrieving a department-issued laptop for an inventory or some other work-related purpose, his presence would seem to be completely unnecessary.[6]

In sum, the government has failed to satisfy its burden to show that the *O'Connor* exception for workplace searches applies to the circumstances of this case. This was an investigatory search to recover evidence unrelated to Johnson's work; thus, the search was invalid without a search warrant unless another exception applies.

### 2. Consent Exception

To that end, the government also argues that the search of the defendant's desk was

---

[6] The government also attempts to justify the search of the desk's drawers by claiming the laptop was small enough to fit inside one of the drawers. The undersigned fails to see the relevance in this point, other than to justify a search of the drawers if the laptop was not already found on top of the desk. In any event, the government has not alleged that the laptop was actually found in one of the drawers, so it is difficult to see what effect this fact could have on this case.

justified under the consent exception to the Fourth Amendment's warrant requirement. "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). In order to satisfy the consent exception, the government must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority. *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997).

Here, Special Agent Chesser testified that he obtained the permission of the defendant's supervisor and the principal of the school to search the desk. Tr. p. 53. Other than pointing to this testimony, however, the government has failed to produce any other evidence that the consent exception was satisfied. Even assuming that the officers obtained effective consent from the supervisor and the principal, there is absolutely nothing in the record to indicate that this consent was given voluntarily or that those parties had the authority to give it. Thus, the government has failed to demonstrate that the officers obtained valid consent to search the desk.

Because the government has not justified the officers' warrantless search of the defendant's desk, it has failed to meet its burden to show the search was reasonable under the Fourth Amendment. Therefore, the evidence obtained in that search, including a debit card, bank statements, and a laptop computer, should be suppressed.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the motion to suppress [doc. # 21] filed by defendant Raul X. Johnson be **DENIED in part and GRANTED in part** as set out above.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of March 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE