RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 5/14/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NUMBER 11-0217 |
| VERSUS | JUDGE ROBERT G. JAMES |
| RAUL X. JOHNSON | MAG. JUDGE KAREN L. HAYES |

# RULING

Pending before the Court is a Motion to Suppress [Doc. No. 21] filed by Defendant Raul X. Johnson ("Johnson"). On March 20, 2012, Magistrate Judge Karen L. Hayes issued a Report and Recommendation [Doc. No. 30], recommending that the Court grant the motion in part and deny the motion in part. On April 3, 2012, the Government filed an Objection [Doc. No. 31] to the Report and Recommendation. Johnson did not respond to the objection.

In his Motion to Suppress, Johnson, an officer with the Monroe City Police Department ("MPD"), challenges two searches by law enforcement: (1) a search of the police cruiser assigned to him for use as a school resource officer and (2) a search of his desk at Carroll Junior High School. With regard to the police cruiser, Magistrate Judge Hayes concluded that Johnson did not have a reasonable expectation of privacy, and she recommended that the Motion to Suppress be denied as to the evidence obtained from the cruiser. With regard to the desk, however, Magistrate Judge Hayes found that Johnson did have a reasonable expectation of privacy and that the warrantless search of his desk violated the Fourth Amendment and was presumptively unreasonable. Although she considered both the workplace exception, pursuant to *O'Connor v. Ortega*, 480 U.S. 709 (1987), and the consent exception, Magistrate Judge Hayes found that

neither exception was applicable, and, thus, recommended that the Motion to Suppress be granted and the evidence obtained from Johnson's desk be suppressed.[1]

The Government objects that the Court should deny the Motion to Suppress in its entirety because the search of Johnson's desk was a legitimate workplace search and, in the alternative, the evidence would have been inevitably discovered. The Government admits that the *O'Connor* decision did not address warrantless workplace searches for purposes of criminal investigation, but argues that under *United States v. Slanina*, 283 F.3d 670 (5th Cir. 2002), judgment vacated on other grounds, 537 U.S. 802, 123 S.Ct. 69 (2002), the Fifth Circuit would find that the workplace exception applies in this case. Even if the workplace exception does not apply, the Government argues that the Motion to Suppress should be denied because the inevitable discovery doctrine permits the introduction of the evidence seized from Johnson's desk.

The Court will first address the Government's objection that the search of Johnson's desk was permissible under the Fifth Circuit's interpretation of the workplace exception. In *Slanina*, the case cited by the Government, the defendant was a city fire marshal, who was provided a computer for work purposes. The computer was located in his private office, and Slanina had used a password to protect its contents. While Slanina was home recovering from oral surgery, Ryan Smith ("Smith"), a city employee, was upgrading his computer. At the direction of his direct supervisor, Slanina reluctantly gave his password to Smith. While working on the computer, Smith noticed that Slanina had emails which showed that he had accessed newsgroups. Smith looked further and noticed that three titles suggested the newsgroups

---

[1] The evidence obtained from Johnson's desk included a debit card, bank statements and a laptop computer. [Doc. No. 30, p. 14].

involved pornography. It was "widely known that employees were not to have pornographic material on their computers"; therefore, Smith investigated further, determined that a number of pornographic news files had been read and also found an adult pornographic image on the computer. 283 F.3d at 673. At that point, Smith notified supervisors. Smith continued to search the computer and located child pornography as well. Slanina's direct supervisor instructed Smith to secure Slanina's office. The next day, the computer was brought to the office of the Public Safety Director, Mike Keller ("Keller"), who was a law enforcement official in charge of the city's police and fire departments. With Smith's assistance, Keller spent about two hours searching Slanina's computer. He then contacted the city manager to discuss the possible criminal violations and the misuse of city property. Human resources was also contacted.

After his conviction for possession of child pornography, Slanina appealed to the Fifth Circuit, arguing that the district court erred in denying his motion to suppress because he had a reasonable expectation of privacy in the computer, and Keller's warrantless search[2] violated the Fourth Amendment. The Fifth Circuit first found that Slanina had a subjective expectation of privacy in his computer and that his expectation of privacy was reasonable. *Id.* at 676. However, the Fifth Circuit then concluded that the warrantless search of Slanina's computer did not violate the Fourth Amendment. In reaching this conclusion, the Fifth Circuit used the *O'Connor* decision as only a "starting point," explaining that the Supreme Court had declined "to 'address the appropriate standard when an employee is being investigated for criminal misconduct or breaches of other nonwork-related or regulatory standards.'" *Id.* at 677 (quoting 480 U.S. at 729 n.*). The Fifth Circuit further noted that the Supreme Court "suggested that its holding might not extend to the context of investigations into work-related misconduct by government

---

[2]Slanina did not challenge Smith's search.

employers who . . . are also law enforcement officers." *Id.*

After reviewing the decisions of other appellate courts, the Fifth Circuit "approved of the Fourth Circuit's reasoning in [*United States v. Simon*, 206 F.3d 392 (4th Cir. 2000)]," which involved an employee of the Central Intelligence Agency suspected of using his work computer to access pornography. 283 F.3d at 678. The Fifth Circuit agreed with the Fourth Circuit "that *O'Connor's* goal of ensuring an efficient workplace should not be frustrated simply because the same misconduct that violates a government employer's policy also happens to be illegal." *Id.* The Fifth Circuit acknowledged the potential conflict between the Fourth Circuit's interpretation of *O'Connor* in *Simon* and the Ninth Circuit's interpretation in *United States v. Taketa*, 923 F.2d 665 (9th Cir. 1991), where that court suppressed evidence obtained after the "character of the investigation had changed" from an "internal investigation into work-related misconduct" into "a criminal investigation." 283 F.3d at 678 n.7. While apparently siding with the Fourth Circuit, the Fifth Circuit noted that even under the *Takeda* interpretation, there was a "critical distinction" in the search of Slanina's computer:

> at the time of Keller's search, he was still conducting an internal investigation into work-related misconduct as well as a criminal search. Because of the dual nature of Keller's search, the government employer's interest in the prompt and efficient operation of the workplace are more compelling in the present case than in *Takeda*, in which the investigation was purely criminal.

*Id.* The Fifth Circuit also addressed the fact that Keller was a law enforcement officer, as opposed to the computer network administrator who conducted the search in *Simon*. However, the Fifth Circuit relied on a Seventh Circuit case for the proposition that it is the "purpose of the search," not whether the employer is a law enforcement officer, that is determinative. *Id.* at 679 (citing *United States v. Fernandes*, 272 F.3d 938, 943 n.3 (7th Cir. 2001).

In *Slanina's* case, the Fifth Circuit reached the "inescapable conclusion" that Keller's

4

search of Slanina's computer should be reviewed under *O'Connor*. *Id.* at 679. In reaching that conclusion, the Fifth Circuit explained that the "record evidence demonstrates that as of the time of Keller's search, the probe remained at least partly an investigation into employee misconduct. The subsequent involvement of the City Manager and human resources in the process attests to that characterization." *Id.* Under these facts, the Fifth Circuit concluded that "[t]o hold that a warrant is necessary any time a law enforcement official recognizes the possibility that an investigation into work-related misconduct will yield evidence of criminal acts would frustrate the government employer's interest in 'the efficient and proper operation of the workplace.'" *Id.* (citing *O'Connor*, 480 U.S. at 723). The Fifth Circuit found that both the inception of Keller's search, after he had learned of Smith's discoveries, and the scope of his search were reasonable and justified.

Under *Slanina*, the Government is correct that the status of the "searcher" as a "law enforcement officer is not dispositive," and that "'work related misconduct' can include criminal activity unrelated to the job." [Doc. No. 31, p. 4]. However, the Government asks the Court to ignore the "critical distinction" between this case and *Slanina*: whether an investigation was "wholly criminal" or had the dual purpose of an internal investigation into work-related misconduct and into the possible commission of a crime. In this case, there was no dual purpose; the single purpose of this investigation was Johnson's possible commission of a crime. On September 8, 2008, Sergeant Charles Roark of the MPD, opened a criminal investigation[3] into the sale of stolen merchandise through an eBay account in Johnson's name. On September 12, 2008, Sergeant Roark asked the Federal Bureau of Investigation ("FBI") to become involved. By

---

[3]Sergeant Roark was not attached to internal affairs, but was an investigator in the criminal investigative division.

the time they searched Johnson's desk at Carroll Junior High School on February 20, 2009, Sergeant Roark and Agent Chesser had been involved in a joint criminal investigation of Johnson for six months. Under these circumstances, the MPD's interest in the prompt and efficient operation of its workplace is not compelling in the least. The search of Johnson's desk should not be reviewed under the *O'Connor* exception, as interpreted by the Fifth Circuit, and Magistrate Judge Hayes properly recommended the exclusion of the evidence found as a result of the search of Johnson's desk.

Finally, the Government raises an entirely new argument that the search of Johnson's desk led only to evidence that would have been inevitably discovered. "The inevitable discovery rule applies if the Government demonstrates by a preponderance of the evidence that (1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation."[4] *United States v. Jackson*, 596 F.3d 236, 240-41 (5th Cir. 2010) (citing *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir.1991)). The Government argues that Johnson had been placed on leave pending the outcome of the investigation and that Johnson's supervisor had instructed Sergeant Roark to retrieve the MPD's laptop from Johnson's desk. Therefore, the Government contends that the bank statements and debit card would have been inevitably discovered by either Sergeant Roark and Agent Chesser or by another MPD employee designated to clean out Johnson's desk.

First, the Court has just held that Sergeant Roark and Agent Chesser did not have the

---

[4]The Fifth Circuit in *Jackson* questioned, but refused to "address the continuing vitality of the active-pursuit element, as an ongoing grand jury investigation that has already led to an indictment would clearly satisfy it." 596 F.3d at 242.

authority, absent a search warrant, to search Johnson's desk. Thus, this argument carries no weight.

Second, the Court must also consider whether there is sufficient evidence to find that there is a "reasonable probability" that the debit card and bank statements would have been lawfully discovered otherwise. The Court has reviewed the record in this matter, but the only testimony addressing this argument indicates that Johnson's laptop computer was located in his office at Carroll Junior High School and that it was a 14-inch screen IBM laptop which could fit in a drawer. Neither Sergeant Roark nor Agent Chesser testified as to where the computer was located or where the debit card and bank statements were found. On the record before the Court, the Government has failed to establish by a preponderance of the evidence that there was a reasonable probability the contested items would have been discovered by lawful means.

Therefore, for the reasons stated in this Ruling and those additional reasons in the Report and Recommendation of the Magistrate Judge, which the Court ADOPTS, the Motion to Suppress is GRANTED IN PART and DENIED IN PART. The Motion to Suppress the evidence obtained as a result of the search of the defendant's desk at Carroll Junior High School is GRANTED. The Motion to Suppress the evidence obtained as a result of the searches of the defendant's police cruiser is DENIED.

MONROE, LOUISIANA, this 14 day of May 2012, Monroe, Louisiana.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE